NEW-YORK,
Feb. 1823.

The People
*vs.*
Eber Hale.

---

### The People *vs.* Eber Hale. *False Pretences.*

The court are always willing to hear what can be alleged in favor of a prisoner in arrest of judgment.

EBER HALE was indicted under the statute, for obtaining money by false pretences, in the following form, for :

\* " That Eber Hale, late of the first Ward of the city of " New York, in the County of New York aforesaid, la-" borer, being a person of an evil disposition, ill name " and fame, and of dishonest conversation, and devising " and intending, by unlawful ways and means, to obtain " and get into his hands and possession, the monies, goods " chattels, and effects, of the honest and good people of " the State of New York, to maintain his idle and profli-" gate course of life. On the first day of July, in the " year of our Lord one thousand eight hundred and " twenty-two, at the first Ward of the city of New York, in " the county of New York aforesaid, with force and arms, " on the day and year last aforesaid, with intent to cheat " and defraud one Abraham Bensel, did then and there " unlawfully, knowingly, and designedly, falsely pretend " and represent to the said Abraham Bensel; that a cer-" tain draft for six thousand seven hundred dollars, pur-" porting to have been drawn by a Mr. Edmonsten of " Charleston, on a house in Boston, (and which said Eber " Hale then and there exhibited to the said Abraham " Bensel,) had been protested for non-payment; that he, " the said Eber Hale, had his pocket cut, and his bocket-" book, containing one hundred and seventy-five dollars,

\*Settled by the District Attorney, and on file in the Clerk's office— carefully copied.

"stolen therefrom, and that he had got the pocket-book
"subsequently, at the police office in the city of New
"York, but no money; that a certain other draft for six
"thousand five hundred dollars, drawn on a Mr. Thomp-
"son, of Philadelphia, (which said Eber Hale, then and
"there exhibited to the said Abraham Bensel,) had been
"received in exchange by him, the said Eber Hale, for
"the protested draft, as aforesaid; and that the said Eber
"Hale expected to receive the money on the said last
"mentioned draft; and the said Abraham Bensel, then
"and there believing the said false pretence and repre-
"sentation, so made as aforesaid, by the said Eber Hale,
"and being received thereby, was induced, by reason
"of the false pretence and representation, so made as
"aforesaid, to deliver, and did then and there deliver to
"the said Eber Hale, thirty pieces of silver coin, called
"dollars, of the value of one dollar each, ten promissory
"notes for the payment of five dollars each, and of the
"value of five dollars each, then and there being due and
"unsatisfied, five other promissory notes for the payment
"of three dollars each, and of the value of three dollars
"each, then and there being due and unsatisfied, of the
"proper monies, goods, chattels, and effects of the said
"Abraham Bensel, the said Eber Hale did then and there
"receive and obtain the said promissory notes and money
"of the said Abraham Bensel, of the proper monies,
"goods, chattels, and effects of the said Abraham Bensel,
"by means of the false pretence and representation afore-
"said, and with intent to cheat and defraud the said Abra-
"ham Bensel of the said promissory notes and money;
"whereas, in truth and in fact, the said Eber Hale had
"not any draft for six thousand seven hundred dollars
"drawn by Mr. Edmonston of Charleston, on a house in

NEW-YORK,
Feb. 1823.

The People
vs.
Eber Hale.

"Boston, and no such draft had been protested, and "whereas, in fact, the said Eber Hale had not been "robbed of any money, and never did receive any pocket-"book at the police office which had been stolen from "him ; and whereas, in truth and in fact, no other draft "for six thousand five hundred dollars, drawn on a Mr. "Thompson of Philadelphia, had ever been received by "him, the said Eber Hale, in exchange. for the said first "mentioned draft ; and whereas, in truth and in fact, both "drafts, exhibited by the said Eber Hale, as aforesaid, to "the said Abraham Bensel, were forged and false, and "the said Eber Hale never expected to receive any money "by virtue thereof, from the persons on whom they pur-"ported to be drawn, and which the said Eber Hale then "and there well knew ; and whereas, in fact and in truth, "the pretence and representation, so made as aforesaid, "by the said Eber Hale, to the said Abraham Bensel, "was in all respects utterly false and untrue, to wit, on "the day and year last aforesaid, at the Ward, city and "county aforesaid ; and whereas, in fact and in truth, the "said Eber Hale well knew the said pretence and repre-"sentation, so by him made, as aforesaid, to the said "Abraham Bensel, to be utterly false and untrue, at the "time of making the same.

"And so the jurors aforesaid, upon their oath afore-"said, do say, *That* the said Eber Hale by means of the "false pretence aforesaid, on the first day of July, in the "year of our Lord one thousand eight hundred and "twenty-two aforesaid, at the first Ward of the city of "New York, in the county of New York, aforesaid, un-"lawfully, falsely, knowingly, and designedly, did re-"ceive from the said Abraham Bensel, of the proper mon-"ies, goods, chattels, and effects of the said Abraham

"Bensel, with intention to defraud him of the same,

NEW-YORK,
Feb. 1823.

The People
vs.
Eber Hale.

"against the form of the statute in such case made and "provided, and against the peace of the people of the "state of New York, and their dignity."

To this indictment the prisoner plead not guilty, and put himself upon his country for trial.

The evidence against was as follows : He came to board in Water-street, in the early part of June last, directly opposite to the grocery store of the prosecutor. It appeared that some years since, the prosecutor had lived in Orange county, and the prisoner had stopped one or two days at his house, but had no other connexion or acquaintance but that derived from that circumstance.

He called over to the store of the prosecutor, and told him he was sorry to see him in such a small way, and intimated that he was in possession of large funds, and would assist him in his business ; telling him he thought they might become mutually serviceable to each other : he would go on to the southward and purchase goods, and consign them to the prosecutor, and telling him he had a draft drawn by a Mr. Edmondson in Charleston, payable in Boston ; that he had just been to Boston, but the house had failed, and the draft was protested for non-payment : that he had borrowed $200 of a friend to come on to New York : that on the 4th of July, as he was walking among the crowd in the Park, his pocket-book, with the contents, was cut out of his coat pocket.

In consequence of this story, he prevailed upon the prosecutor to lend him, at sundry times, different sums of money. After working upon the credulity of the prosecutor by these artifices for some time, he told him he had a draft on Mr. Edward Thompson, of Philadelphia, for seven hundred and fifty dollars, which would be paid on

NEW-YORK,
Feb. 1823.

The People
*vs.*
Eber Hale.

presenting it in Philadelphia. He again prevailed upon the prosecutor to lend him more money for the purpose of going there. He also represented himself as an opulent merchant; asserting he had two ships at sea, one daily expected into port.

By these falsehoods and arts, he obtained about $167 from the prosecutor, but had left 14 barrels of flour in his possession, which reduced the amount to about $100.

After the prisoner had got the last sum of money from the prosecutor, he went to Philadelphia, under a pretence of receiving the amount of the draft, and was seen again in three days in New York. The prosecutor heard no more of him until he learnt from the police-office of this city, he was in Norfolk gaol.

It was soon discovered he was no merchant; that he owned no vessels; that he followed no business; that the drafts were forgeries; that he was a gambler, and a man of notorious bad character.

*Maxwell, District Attorney*, rested the prosecution.

*Price, Fay,* and *Phoenix*, counsel for the prisoner, made a number of exceptions, not only to the evidence, but also to the indictment.*

The court observed to the jury, that the evidence was of that positive nature as to admit of no doubt of the prisoner's guilt. And recommended to the jury to find him guilty. That the court were always willing to hear what could be alleged in favor of the prisoner, in arrest of judgment.

NOTE.—At common law this offence was confined within very narrow limits.

It was held that at common law no fraud by cheating or using false pretences, could be punished by indictment, unless it affected the public.

*The court observed that the counsel for the defendant should have the advantage of the several exceptions made on arrest of judgment.

They are carefully noted, and will be given in full in the report of the argument on the exceptions, if they take place.

The principles laid down by Lord Mansfield, in the Brewer's case, 2 Burr. 1125 seems to have been respected and adopted by his successors. He decided on a prosecution for this species of crime, that "an offence to be indictable must be such an one as affects the public:" and he pointed out,

1. Fraud by using false weights, Trem. P. C. 103. 6.

2. Fraud by using false measures, Cowper, 324.

3. Fraud by using false tokens, Cro. Jac. 497.

4. Conspiracy to cheat, 2 Ld. Ray. 1179.

5. Frauds affecting the course of Justice, 4 East. Rep. 171.

The first and second offences, in order to make them indictable, must be committed in the common and ordinary course of dealing, 3 Term. Rep. p. 104.

Chitty, in his 3 vol. C. L. p. 757. after enumerating the cases decided, concludes with the following summary : " The cases in which fraud "is indictable at common law, seemed confined to the use of false "weights and measures ; the selling goods with counterfeit marks ; " playing with false dice ; and frauds affecting the course of justice, " and immediately injuring the interest of the public or the crown." And goes on to say : " The first three of the above class of cases seem " to come under the denomination of *false tokens*, often used in the old " authorities. They seem to depend on the principle, that they be- " token a general intent to defraud, and support the rule laid down, "'that the injury must be to the public."

To reach the numerous and complicated cases of fraud that were not indictable at common law, that statute 33 Hen. 8. C. 1. was passed. This statute made the fraud upon an individual, by using *false tokens*, punishable by indictment, whereas at common law the offence must 'be against the public, or in some measure affect the public interest.

To supply the defects of the 33 Hen. 8. which it is said would not extend to a verbal representation, the 30 Geo. 2. was passed. In this act the word *false pretences* is used, and is said to include every extortion of money or goods with intent to defraud.

This statute was followed by the 52 Geo. 3. which extended the operation of former statutes to bonds, bills of exchange, bank notes, all securities and orders for the payment of money, or the transfer of goods, or any valuable thing whatsoever.

For the construction of these statutes, see the following authorities : 2

NEW-YORK,
Feb. 1823.

The People
*vs.*
Eber Hale.

Ld. Ray. 1466. 2 East. P. C. 689. 6 Term. Rep. 565. 2 Burr. 1128. 3 Campb. 370. 3 Term. Rep. 103. ibid. 98. East P. C. 830. 2 East, Rep. 30. 2 Leach, 614.

Our statute defining this offence is to be found 1 vol, R. L. p. 410 § 13. The operative words are:—shall knowingly and designedly, by false pretence, obtain from any other person any money, goods or chattels, *or other effects whatsoever;* with intent to cheat or defraud any person or body politick or coporate, &c. It is copied from 30 Geo. 2. C. 24.

Upon this statute a great number of indictments have been prosecuted in the court of sessions for the city and county of New York. The following is a short summary of them.

John Ring's case, City-Hall Rec. vol. 1. p. 7.

Mordecai Lazarus's case, ibid, p. 89. It was decided in this case that an equitable right or interest is embraced within the words. " or other effects whatsoever," contained in the statute. And that where divers pretences alleged to be false, are laid in the same count in the indictment, and either of them sufficient within itself, is substantially proved to be false on the trial, the indictment is sufficiently supported : nor is it necessary every offence so laid should be proved false.

In the case of Henry Lanstaff and others, ibid p. 116 it was decided, that if a man by falsely representing himself to be in a particular situation, obtain thereby money or goods, which without such representations, he would have been unable to obtain, he is guilty of obtaining the money or goods by false pretences.

George Lynch's case, ibid p. 438. there is in this case the following syllabus. It seems, where a man resorting to no artifice or false token, calculated to gain credit, beyond his own assertion or act founded on his own responsibility, obtains money or goods, should it appear such assertion was false, and such act fraudulent, the offence doth not fall within the provisions of the statute aforesaid, and the party so defrauded must resort to a civil action for redress.

See Dinah Perry's case, ibid 164. and vol. 3. p. 3.

In Daniel K. Allen's case, ibid vol. 3. p. 118. it was decided, that to constitute a false pretence under the statute, it was

necessary there should be a false allegation; and see also Eli B. Mott's case, p. 155. vol. 4. p. 53—61.

See also James Conger's case, and the cases there collected, ibid p. 65 to 75, and Abraham Collin's case, ibid p. 143.